UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:17-CV-80917-ROSENBERG/REINHART

JOHN CALDWELL,

    Plaintiff,

v.

JAMES A. ALBANO, JR., and
TOWN OF JUPITER, FLORIDA,

    Defendants.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff's Motion for Partial Summary Judgment on Count I of the Amended Complaint [DE 48] and Defendant James A. Albano, Jr.'s Motion for Final Summary Judgment and Incorporated Memorandum of Law [DE 64]. The Court has carefully considered both Motions, and the parties' respective filings in support thereof and in opposition thereto, and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion for Final Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

### I.     INTRODUCTION

This is an action for deprivation of civil rights. Plaintiff John Caldwell alleges that Defendant James A. Albano, Jr., an officer employed by the Town of Palm Beach Police Department, arrested him without probable cause, entered his home without a warrant, and used excessive force against him in violation of his Fourth, Fifth, and Fourteenth Amendment rights. Plaintiff's Amended Complaint [DE 7] contains seven counts against Defendant Albano and the

1

Town of Jupiter, Florida. Following Plaintiff's voluntary dismissal of Counts III through VI, *see* DE 25, and this Court's dismissal of Counts I and II against the Town, Count VII, and all claims against Defendant Albano in his official capacity, *see* DE 39, the only claims remaining are Counts I and II against Defendant Albano in his individual capacity.

In Count I, Plaintiff alleges that Defendant Albano violated his Fourth Amendment rights by "opening the door to Plaintiff's residence with neither permission nor a warrant" and "reaching into Plaintiff's home, physically grabbing Plaintiff, and dragging him out of his home" without a warrant or probable cause. *See* DE 7 ¶¶ 43–44. Consistent with the parties' briefing on their respective summary judgment motions, the Court construes Count I as asserting claims for false arrest, warrantless entry, and excessive force in violation of Plaintiff's Fourth Amendment rights. In Count II, Plaintiff alleges that Defendant Albano violated his Fifth and Fourteenth Amendment rights by "[h]andcuffing Plaintiff without [a] warrant and without probable cause," without stating that Plaintiff was under arrest or informing Plaintiff of his *Miranda* rights, "inflict[ing] . . . extrajudicial punishment . . . without arrest," and "us[ing] . . . excessive and unnecessary force and violence." *See id.* ¶¶ 48–52. The Court construes Count II as asserting claims for false arrest and excessive force in violation of Plaintiff's Fifth and Fourteenth Amendment rights.

Defendant Albano has moved for summary judgment in his favor on both Count I and Count II. Plaintiff has moved for summary judgment in his favor on Count I only.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a

motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

### III.     FACTUAL BACKGROUND[1]

On the morning of November 25, 2016, Plaintiff and a woman by the name of Pamela Paxton were shouting at each other and going in and out of Plaintiff's apartment in Jupiter, Florida. *See* DE 65, Defendant's Statement of Material Facts ("SOMF") ¶¶ 1–3;[2] DE 67, Plaintiff's Response to Defendant's Statement of Material Facts ("Response") ¶¶ 1–3. Plaintiff was wearing a yellow shirt. SOMF ¶ 4; Response ¶ 4.

At approximately 9:45 a.m. that day, an unidentified person called 911 to report a domestic incident occurring at Plaintiff's address. SOMF ¶ 5; Response ¶ 5. The caller stated that a man named John and a woman named Pamela, both of whom were possibly intoxicated, were

---

[1] The facts set forth in this section are undisputed unless otherwise indicated. Where a dispute exists, the Court has viewed the facts in the light most favorable to Plaintiff and drawn all reasonable inferences in his favor, as the Court disposes of this case on Defendant's Motion. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).
[2] While the Court cites mainly to Defendant's Statement of Material Facts [DE 65] and Plaintiff's Response thereto [DE 67], the Court has reviewed all of the evidence cited in those filings and has determined that each fact recited herein is properly supported by the record.

fighting and running in and out of Plaintiff's apartment. SOMF ¶ 7; Response ¶ 7. The caller also stated that John was wearing a yellow shirt. SOMF ¶ 7; Response ¶ 7.

Defendant and Officer Nicholas Brandt, both of whom were working as patrol officers for the Town of Jupiter Police Department on November 25, 2016, responded to the call. SOMF ¶¶ 9–10; Response ¶¶ 9–10. Defendant was advised that he was responding to a reported domestic incident involving a man named John and a woman named Pamela who were fighting in front or outside of a particular apartment; that both John and Pam were possibly intoxicated; and that John was wearing a yellow shirt. SOMF ¶ 10; Response ¶ 10.

Shortly after arriving on the scene, Defendant saw two people exit the subject apartment; these two people matched the description provided by the 911 caller. SOMF ¶ 11; Response ¶ 11. Officer Brandt advised Defendant that the man, who was wearing a yellow shirt, was named John. SOMF ¶ 12; Response ¶ 12. Both Defendant and Officer Brandt were familiar with and recognized the woman as Pamela Paxton. SOMF ¶ 13; Response ¶ 13.

Defendant walked toward Plaintiff and said, "You, sir, come here." SOMF ¶ 16; Response ¶ 16 DE 65-7; DE 65-8. Plaintiff began walking toward Defendant. SOMF ¶ 16; Response ¶ 16; DE 65-7; DE 65-8. Defendant then asked Plaintiff, "What's your name?" SOMF ¶ 16; Response ¶ 16; DE 65-7; DE 65-8. Plaintiff did not answer and instead turned and began walking back toward his apartment. SOMF ¶ 16; Response ¶ 16; DE 65-7; DE 65-8. As he did so, Officer Brandt identified him as "John." SOMF ¶ 16; Response ¶ 16; DE 65-7; DE 65-8. Defendant then said to Plaintiff, "John, come here." SOMF ¶ 16; Response ¶ 16; DE 65-7; DE 65-8. Plaintiff, who was not yet inside his apartment, did not comply with that command. SOMF ¶ 16; Response ¶ 16; DE 65-7; DE 65-8. Defendant then said, "John don't go inside. You need to follow my orders because I'm here to investigate. Come here." SOMF ¶ 17; Response ¶ 17; DE

65-7; DE 65-8. Plaintiff stopped and turned toward Defendant, then turned back and walked through a screen door into his apartment, as Defendant said, "Don't go inside the house. Come here. Why are you going inside the house?" SOMF ¶ 17; Response ¶ 17; DE 65-7; DE 65-8. During this entire exchange, Defendant was wearing his police uniform, was never more than a few feet away from Plaintiff, was speaking loudly, and was walking toward Plaintiff and the door to Plaintiff's apartment. SOMF ¶¶ 17–19; Response ¶¶ 17–19; DE 65-7; DE 65-8. Plaintiff knew that Defendant was a police officer. SOMF ¶ 18; Response ¶ 18.

At this point, the parties' respective versions of events begin to diverge. Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Defendant reached across the threshold of Plaintiff's apartment, pulled Plaintiff outside, and threw him to the ground. SOMF ¶ 25; Response ¶ 25; Additional Material Facts Submitted by Plaintiff, DE 67 at 6 ¶¶ 11–12. With Defendant's assistance, Officer Brandt then placed handcuffs on Plaintiff. SOMF ¶ 29; Response ¶ 29. Defendant arrested Plaintiff for resisting an officer without violence in violation of Florida Statutes § 843.02. SOMF ¶ 30; Response ¶ 30.[3]

Shortly after he was handcuffed, Plaintiff told Officer Brandt that he had been injured. Additional Material Facts Submitted by Plaintiff, DE 67 at 7 ¶ 18. Defendant then transported Plaintiff to Jupiter Medical Center ("JMC") for treatment. SOMF ¶ 33; Response ¶ 33. Because Plaintiff remained under arrest and was not free to go, Defendant handcuffed Plaintiff to the hospital bed. SOMF ¶ 34; Response ¶ 34.

As a result of this incident, Plaintiff sustained injuries to his lower middle back, left shoulder, and right ring finger. SOMF ¶ 35; Response ¶ 35. Plaintiff is unable to stand for long periods of time but can sit for hours without any pain or discomfort. SOMF ¶ 36; Response ¶ 36.

---

[3] Plaintiff later entered a plea of not guilty and the case was ultimately closed after a *nolle prosequi* was entered. *See* Additional Material Facts Submitted by Plaintiff, DE 67 at 8 ¶ 24.

While Plaintiff's right ring finger is not as straight as it once was and now has a slight bend, Plaintiff describes this as "no big deal" and has no physical limitations in this finger. SOMF ¶ 37; Response ¶ 37; DE 65-9, Deposition of John Caldwell at 91:14–19. An X-ray of Plaintiff's right ring finger, taken on the date of the incident, showed no evidence of a fracture or dislocation. SOMF ¶ 38; Response ¶ 38. While Plaintiff continues to have pain in his left shoulder, aside from X-rays taken at JMC on the day of the incident, Plaintiff has received no treatment for his left shoulder. SOMF ¶ 39; Response ¶ 39. That X-ray showed no evidence of fracture and no acute abnormality. SOMF ¶ 40; Response ¶ 40. Plaintiff was diagnosed by treating physicians at JMC with a hypertensive episode, mallet finger, and contusion of the upper arm. SOMF ¶ 41; Response ¶ 41.

## IV. <u>DISCUSSION</u>

With respect to Count I, the Court concludes that Defendant had probable cause, or at least arguable probable cause, to arrest Plaintiff; Defendant's warrantless entry into Plaintiff's home to effectuate the arrest was supported by both probable cause and exigent circumstances; and Defendant's use of force against Plaintiff was reasonable and de minimis. Defendant is therefore entitled to summary judgment in his favor as to Plaintiff's claims for false arrest, warrantless entry, and excessive force in violation of his Fourth Amendment rights. With respect to Count II, the Court concludes that Plaintiff cannot assert claims for false arrest and excessive force under the Fifth or Fourteenth Amendment. Defendant is therefore entitled to summary judgment in his favor as to these claims.

### A. <u>Count I: False Arrest (Fourth Amendment)</u>

An arrest made without a warrant and without probable cause violates the Constitution and may serve as the basis for a claim under 42 U.S.C. § 1983. *Gates v. Khokhar*, 884 F.3d 1290,

1297 (11th Cir. 2018) (citing *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010)). However, "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge for the arrest." *Id.* (quoting *Brown*, 608 F.3d at 734) (internal quotation marks omitted). Probable cause exists where "the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004)) (internal quotation marks omitted).

In the absence of probable cause, "a police officer is entitled to qualified immunity[4] if he had only 'arguable' probable cause to arrest the plaintiff." *Gates*, 884 F.3d at 1298 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest the [plaintiff]." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)) (internal quotation marks omitted). An officer who "reasonably but mistakenly conclude[s] that probable cause is present" has arguable probable cause, is entitled to qualified immunity, and "cannot be held personally liable for false arrest." *Gates*, 884 F.3d at

---

[4] Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). A government official acts within his discretionary authority if the challenged actions were (1) "undertaken pursuant to the performance of his duties" and (2) "within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Here, there is no dispute that Defendant was acting within his discretionary authority. The Court must then consider "whether the plaintiff's allegations, if true, establish a constitutional violation" and "whether the right violated is 'clearly established.'" *Barnett v. City of Florence*, 409 F. App'x 266, 270 (11th Cir. 2010). These two questions may be considered in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

7

1298 (quoting *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010)) (internal quotation marks omitted).

The existence of probable cause or arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Id.* (quoting *Brown*, 608 F.3d at 735) (internal quotation marks omitted). In the instant case, Defendant arrested Plaintiff for violating Florida Statutes § 843.02, which provides: "Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . ." Thus, a violation of § 843.02 occurs where: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009) (citing *N.H. v. State*, 890 So. 2d 514, 516–17 (Fla. Dist. Ct. App. 2005)). The Court considers each element in turn.

### i. **Whether Defendant Was Engaged in Lawful Execution of Legal Duty**

It is undisputed that Defendant asked Plaintiff to identify himself, ordered Plaintiff multiple times to "come here" and not to go inside his apartment, and informed Plaintiff that he was there for investigative purposes. *See* SOMF ¶¶ 16–17. The question is whether this amounts to the lawful execution of a legal duty. The Court concludes that it does.

Under Florida law, a law enforcement officer may temporarily detain an individual "under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county . . . ." Fla. Stat. § 901.151. To determine whether a stop is justified, the Court "must look at the totality of the circumstances of each case to see whether the

detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Scott v. State*, 150 So. 3d 1273, 1275 (Fla. Dist. Ct. App. 2014) (internal quotation marks and citation omitted). Similarly, the Fourth Amendment to the United States Constitution "permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. The reasonable suspicion necessary to justify such a stop is dependent upon both the content of information possessed by police and its degree of reliability." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (internal quotation marks and citations omitted). "[A] detailed, contemporaneous report of suspicious activity to a 911 emergency dispatcher carries with it sufficient indicia of reliability when the details and location of the described events turn out to be correct." *United States v. Jean-Charles*, No. 15-60309-CR, 2016 WL 828830, at *4 (S.D. Fla. Mar. 3, 2016) (citing *Navarette*, 134 S. Ct. at 1689–90).

In the instant case, Defendant had sufficient reliable information to create a particularized and objective basis for suspecting Plaintiff of legal wrongdoing. The individual who made the 911 call to which Defendant responded had reported that a man named John and a woman named Pamela were fighting and running in and out of Plaintiff's apartment and that John was wearing a yellow shirt. *See* SOMF ¶¶ 5, 7. When Defendant arrived at the address specified by the caller, only minutes after the call had been placed, *see* DE 65-6, he saw two people who matched the description provided by the caller exit the subject apartment. SOMF ¶ 11. Officer Brandt advised Defendant that the man, who was wearing a yellow shirt, was named John. *Id.* ¶ 12. Both Defendant and Officer Brandt were familiar with and recognized the woman as Pamela Paxton. *Id.* ¶ 13. Having confirmed the accuracy of the details provided by the caller, Defendant had sufficient reliable information to create a particularized and objective basis for suspecting

9

Plaintiff of legal wrongdoing,[5] and was therefore permitted to detain Plaintiff temporarily. *See Navarette v. California*, 134 S. Ct. 1683, 1687 (2014); *Scott v. State*, 150 So. 3d 1273, 1275 (Fla. Dist. Ct. App. 2014). In other words, Defendant was engaged in the lawful execution of a legal duty when he asked Plaintiff to identify himself and ordered Plaintiff multiple times to "come here" and not to go inside his apartment.

      ii.      <u>**Whether Plaintiff's Action Constituted Obstruction or Resistance**</u>

Plaintiff failed to identify himself when asked to do so by Defendant. *See id.* ¶ 16. Plaintiff also failed to comply with Defendant's repeated orders to "come here" and not to go inside his apartment; Plaintiff instead turned away from Defendant and walked toward his apartment. *See id.* During the entire exchange, Defendant was wearing his police uniform, was never more than a few feet away from Plaintiff, was speaking loudly, and was walking toward Plaintiff and the door to Plaintiff's apartment. *Id.* ¶¶ 18–19. Plaintiff knew that Defendant was a police officer, *see id.* ¶ 18, and Plaintiff has pointed this Court to no evidence that he did not hear Defendant's commands. The Court therefore concludes that Plaintiff's actions constituted obstruction or resistance. *See C.E.L. v. State*, 24 So. 3d 1181, 1186 (Fla. 2009) (citing *H.H. v. State*, 775 So. 2d 397, 398 (Fla. Dist. Ct. App. 2000)) (noting that an individual who flees is guilty of violating Florida Statutes § 843.02 when he knows of the officer's intent to detain him and the officer is justified in making the stop at the point when the command to stop is issued).

In light of the foregoing, the Court concludes that Defendant had probable cause—or at a minimum, arguable probable cause—to arrest Plaintiff for resisting an officer without violence in violation of Florida Statutes § 843.02. *See Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1319 (11th

---

[5] The Court notes that Defendant was responding to a reported domestic incident between a man and a woman, both of whom were possibly intoxicated, who were fighting with each other outside of the man's apartment. Under the circumstances, Defendant could reasonably have suspected Plaintiff of a number of criminal violations, including but not limited to assault, *see* Fla. Stat. § 784.011, battery, *see* Fla. Stat. § 784.03, disorderly intoxication, *see* Fla. Stat. § 856.011, and breach of the peace or disorderly conduct, *see* Fla. Stat. § 877.03.

Cir. 2016) (defining probable cause); *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (defining arguable probable cause). Defendant is therefore entitled to summary judgment in his favor as to Plaintiff's claim of false arrest in violation of his Fourth Amendment rights. *See Gates v. Khokhar*, 884 F.3d 1290, 1297–98 (11th Cir. 2018)

### B. Count I: Warrantless Entry (Fourth Amendment)

It is firmly established that under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). However, a warrantless entry into a home is allowed where both probable cause and exigent circumstances exist. *See id.* (quoting *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991)). Among the recognized situations in which exigent circumstances exist are "danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect." *Id.*

For the reasons set forth above, the Court has already concluded that Defendant had probable cause to arrest Plaintiff. The Court also concludes that exigent circumstances—specifically, hot pursuit—justified Defendant's warrantless entry into Plaintiff's home, which was limited to reaching across the threshold to grab Plaintiff and effectuate his arrest.

"[A] suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43 (1976). In *Santana*, police officers learned through an informant that the defendant possessed money used to purchase narcotics and, when they arrived at her house to arrest her, found her standing in the doorway with a brown paper bag in her hand. *See id.* at 40. They parked within 15 feet of the defendant, exited their vehicle, shouted "police," and displayed their identification.

*See id.* As they approached, the defendant retreated into her house; the officers followed her through the open doorway and caught her in the vestibule. *See id.* After determining that the defendant, standing in her doorway, was in a public place when the police first sought to arrest her, the Supreme Court found that the officers' warrantless entry into her house was justified by a hot pursuit. *See id.* at 42–43. As the Court explained, "hot pursuit means some sort of a chase, but it need not be an extended hue and cry in and about the public streets. The fact that the pursuit here ended almost as soon as it began did not render it any the less a hot pursuit sufficient to justify the warrantless entry into [the defendant's] house." *Id.* (internal quotation marks omitted). *See also United States v. Hayes*, 334 F. App'x 222, 226 (11th Cir. 2009) (finding hot pursuit justified warrantless entry into home to arrest defendant where officers arrived at the defendant's apartment building, saw him on the doorstep, and yelled police, and the defendant turned and saw them, recognized them as police, and fled inside: "It also appears that the officers attempted to begin to arrest [the defendant] in public, by announcing their presence when he stood on the doorstep of his apartment building, and could not only because he retreated inside.")

In the instant case, Plaintiff was standing completely outside of his home when Defendant first encountered him, when Defendant attempted to question him, when he ignored Defendant's request that he identify himself, and when he disobeyed Defendant's repeated commands to "come here" by walking away from Defendant. *See* SOMF ¶¶ 11–12, 16–17. Defendant therefore had probable cause to arrest Plaintiff for violating Florida Statutes § 843.02 before Plaintiff entered his home. Defendant initiated that arrest before Plaintiff entered his home. *See* DE 65-3, Deposition of James Albano, Jr. at 21:9–24, 23:15–24, 32:4–23; DE 65-7; DE 65-8. After Defendant initiated the arrest, Plaintiff continued walking toward his apartment, and Defendant followed him. Defendant was prevented from arresting Plaintiff in public only

12

because Plaintiff reached the door to his apartment before Defendant reached Plaintiff. Exigent circumstances therefore justified Defendant's reaching across the threshold of Plaintiff's home to effectuate the arrest. *See Santana*, 427 U.S. at 42–43.

As both probable cause and exigent circumstances existed, Defendant's warrantless entry into Plaintiff's home did not violate Plaintiff's Fourth Amendment rights. Defendant is therefore entitled to summary judgment in his favor as to this claim.

### C. Count I: Excessive Force (Fourth Amendment)

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted). "'Determining whether the force used to effect a particular seizure is 'reasonable'' requires balancing of the individual's Fourth Amendment interests against the relevant government interests." *Cty. of Los Angeles, Calif. v. Mendez*, 137 S.Ct. 1539, 1546 (2017) (quoting *Graham*, 490 U.S. at 396). This determination requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted).

In addition, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). *See, e.g.*, *id.* at 1255–58 (finding that the arresting officer's use of force, including "grabb[ing plaintiff] from behind by the shoulder and wrist, [throwing] him against a

13

van three or four feet away, knee[ing] him in the back and push[ing] his head into the side of the van, search[ing] his groin area in an uncomfortable manner, and handcuff[ing] him," was de minimis force); *Durruthy v. Pastor*, 351 F.3d 1080, 1085, 1094–95 (11th Cir. 2003) (finding de minimis force where the officer-defendant, in arresting the plaintiff for resisting an officer without violence in violation of Florida Statute § 843.02, pulled the plaintiff onto the ground and kneed him in the back while struggling to pin the plaintiff's arms behind him in order to handcuff him).

With these principles in mind, the Court concludes that Defendant's use of force was reasonable and de minimis. Beginning with the *Graham* factors, the Court recognizes that the severity of Plaintiff's crime is relatively low. In Florida, the offense of resisting an officer without violence is a misdemeanor. *See* Fla. Stat. § 843.02. The Court notes, however, that the circumstances surrounding the arrest made the situation more severe, as Defendant was responding to a reported domestic incident involving a fight between a man and a woman. *See* SOMF ¶ 10. The Court also recognizes that, viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff did not pose an immediate threat to the safety of Defendant and others; Plaintiff was not carrying a weapon, had not made any threats of violence in Defendant's presence, and had not committed any act of violence in Defendant's presence. However, Plaintiff was actively resisting arrest and attempting to evade arrest by retreating into his home in direct contravention of Defendant's repeated orders not to do so. *See id.* ¶¶ 16–18. In light of Plaintiff's failure to comply with Defendant's verbal commands, it is clear that some amount of force was necessary to detain Plaintiff.

Defendant's use of force was not disproportionate to the severity of the crime, the threat posed by Plaintiff, and Plaintiff's resistance. Just as Plaintiff crossed the threshold, Defendant

grabbed him, threw him to the ground, and handcuffed him. This was no more than the amount of force necessary to stop Plaintiff—who had repeatedly disobeyed Defendant's verbal commands—and effectuate an arrest. The Court therefore concludes that Defendant's use of force was reasonable. *See Graham*, 490 U.S. at 396

In addition, the amount of force used by Defendant was de minimis. Defendant used no more force than that which has been found de minimis in similar cases. *See, e.g.*, *Durruthy*, 351 F.3d at 1085, 1094–95; *Nolin*, 207 F.3d at 1255, 1258 & n.4. The Court also notes that Plaintiff's injuries are limited to pain in his lower middle back (limiting his ability to stand for long periods of time, but not limiting his ability to sit for long periods of time), a slight bend in his right ring finger (which causes no physical limitations and which Plaintiff describes as "no big deal"), and pain in his left shoulder. *See* SOMF ¶¶ 35–37; DE 65-9, Deposition of John Caldwell at 91:14–19. Plaintiff has not sought any treatment for these injuries aside from that received at the hospital immediately following the incident; X-rays taken at the hospital showed no evidence of a fracture or other acute abnormality in either his shoulder or his finger. SOMF ¶ 38. Plaintiff was diagnosed by treating physicians at the hospital with a hypertensive episode, mallet finger, and contusion of the upper arm. SOMF ¶ 41.[6]

For all of these reasons, the Court concludes that Defendant did not use excessive force against Plaintiff. Defendant is therefore entitled to summary judgment in his favor as to this claim.

---

[6] To the extent Plaintiff's excessive force claim is predicated on Defendant's use of handcuffs during Plaintiff's arrest and while at the hospital immediately afterward, the Court notes that Plaintiff has not alleged and has not presented evidence of any injury resulting from the use of handcuffs. "[A] plaintiff asserting an excessive force claim [must] have suffered at least some form of injury." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1326 n.29 (11th Cir. 2017) (quoting *Williams v. Bramer*, 180 F. 3d 699, 703 (5th Cir. 1999)). Under the circumstances of this case, Defendant's use of handcuffs to effectuate Plaintiff's arrest and to detain Plaintiff while in the hospital does not constitute excessive force.

### D. Count II: Excessive Force and False Arrest (Fifth and Fourteenth Amendments)

To the extent Plaintiff asserts a violation of his Fifth Amendment due process rights, Defendant is entitled to summary judgment in his favor. On the date of Plaintiff's arrest, Defendant was employed by the Town of Jupiter Police Department. *See* SOMF ¶ 9. As alleged in Plaintiff's Amended Complaint, the Town of Jupiter is a political subdivision of the State of Florida. *See* DE 7, Amended Complaint ¶ 2. "The Fifth Amendment . . . protects a citizen's rights against infringement by the federal government, not by state government," and is therefore inapplicable here. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (citing *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997)).

To the extent Plaintiff asserts that Defendant violated his Fourteenth Amendment rights by using excessive force, Defendant is entitled to summary judgment in his favor. "If [an] excessive force claim arises out of events occurring during an arrest, the Fourth Amendment governs. If [a] claim arises out of events occurring while plaintiff is a pretrial detainee, the Fourteenth Amendment governs." *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 n.4 (11th Cir. 2009) (citing *Garrett v. Athens-Clarke Cty., Ga.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004)); *see also Garrett*, 378 F.3d at 1279 n.11 (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)) ("Fourteenth Amendment analysis does not begin until '*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time'"). As any force exerted by Defendant occurred during Plaintiff's arrest, the Fourteenth Amendment does not apply to Plaintiff's excessive force claims.

To the extent Plaintiff asserts that Defendant violated his Fourteenth Amendment rights by arresting him without probable cause, Defendant is entitled to summary judgment in his favor.

16

> [A] § 1983 claim cannot be sustained based on the filing of criminal charge without probable cause under the substantive due process or procedural due process protections of the Fourteenth Amendment. . . . [T]he more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in the § 1983 context.

*Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1412 (S.D. Fla. 2014) (citations omitted); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"). To the extent Plaintiff's claims are predicated on a lack of probable cause to arrest him, such claims must therefore be brought under the Fourth Amendment, not the Fourteenth Amendment.

Finally, while not necessary to its conclusion, the Court also notes that, in his Report and Recommendation on Defendants' Motions to Dismiss the Amended Complaint, Magistrate Judge Garber determined that Plaintiffs' allegations in support of Count II—in which he asserts violations of his Fifth and Fourteenth Amendment rights—simply repeated the allegations made in support of Count I—in which he asserts violations of his Fourth Amendment rights. *See* DE 33 at 9. Magistrate Judge Garber therefore applied the same analysis to those claims. *See id.* Plaintiff did not object to this approach, *see* DE 38 at 1 ("Plaintiff does not object to the Report and Recommendation of the Magistrate Judge."), and the Court subsequently adopted that portion of the Report and Recommendation, *see* DE 39.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant James A. Albano, Jr.'s Motion for Final Summary Judgment [DE 64] is **GRANTED**;

2. Plaintiff's Motion for Partial Summary Judgment on Count I of the Amended Complaint [DE 48] is **DENIED**;

3. All other pending motions, including Plaintiff's Motion in Limine to Exclude Testimony and Report of Defendants Expert Witness, John G. Peters [DE 46] and Defendant James A. Albano, Jr.'s Omnibus Motion in Limine [DE 71], are **DENIED AS MOOT**;

4. Defendant James A. Albano, Jr. shall submit a proposed final judgment in Microsoft Word format to Chambers by email by no later than **July 30, 2018**; and

5. The Clerk of Court is directed to **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 26th day of July, 2018.

*[signature: Robin L. Rosenberg]*

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE